183 So. 875

### WHITE v. FIRST NAT. BANK OF OPP et al.

### 5 Div. 259.

Supreme Court of Alabama.

Feb. 24, 1938.

Rehearing Denied April 21, 1938.

Rehearing Granted Oct. 6, 1938.

Further Rehearing Denied Nov. 3, 1938.

Mulkey & Mulkey, of Geneva, for appellees.

J. J. Cockrell, of Talladega, and Pruet & Glass, of Ashland, for appellant.

THOMAS, Justice.

The plaintiff sued the defendants in trover, trespass, and in case. The defendants pleaded in short by consent. The court without a jury rendered judgment for the defendants.

The record discloses that one Carter was the owner of a farm in 1933 and 1935, which had been rented to tenants; that the landlord was indebted to the plaintiff White in a large sum, and to defendant Mizell in a like large sum. He executed a mortgage on his crop grown in Randolph county to plaintiff White for the years 1934 and 1935; and also executed to defendant Mizell a mortgage on the crop for the year 1935. The mortgage relied upon by plaintiff was dated January 24, 1935, and one of the mortgages to Mizell was dated February 8, 1935. The several mortgages to defendant Mizell submitted in evidence are dated, respectively, January 14, 1933, March 13, 1934, and February 8, 1935, and purport to embrace crops grown on these lands in the respective years of 1933, 1934, and 1935, in the counties indicated. The provisions in the mortgage of 1933 are as follows: "I or we also convey the entire crop raised by me or us or my or our families, or in which I or we may be interested in during the years 1933, 1934 and 1935, in Randolph and Clay county, Alabama, all rents and advances coming to me or us as landlord for each year, all or any of which property the mortgagee or assigns may after or before the maturity hereof and for the payment thereof, seize and sell as they may deem best, waiving all informalities and notice." The above mortgage was duly filed and recorded in Clay county on January 20, 1933, and in Randolph county on January 17, 1933. The pertinent provision in the mortgage of March 13, 1934, is to like effect, except that the county of Clay is omitted, and only "Randolph County, Alabama," is described and was filed for record on March 15, 1934.

The mortgage of February 8, 1935, embraced the entire crops grown "during the years 1935; 19—, 19—, in Randolph County, Alabama," and was filed for record on the 16th day of February, 1935.

The defendants also offered in evidence a real estate mortgage on his lands in Clay and Randolph counties dated as of February 6, 1932, for $24,371.99, payable to defendant Mizell, at the First National Bank of Opp, due on January 1, 1933, which contained the provision that: " * * all crops of every description raised or caused to be raised by me or under my direction during the years 1932, 1933, and 1934, in Randolph and Clay Counties, Alabama; all of my farming tools and implements; all of my live stock, personal property, and choses in action, not herein otherwise named; all rents or advances due or to become due to me as landlord from any tenant in said Counties or elsewhere, for 1932, 1933, 1934, and the following additional property: . . ."

It is insisted by appellees, and this was no doubt the theory on which judgment was rendered for defendant, that the portions of the crops due and to which Carter had the possession from respective tenants was to be treated as rents. Michie's Code, § 8807; First National Bank v. Crawford, 227 Ala. 188, 149 So. 228, 229. The mortgage executed on January 9 and due on March 13, 1931, became due before the crop of that year could be raised and gathered. The court said as to the statute:

"Under the provision of that section of the Code, the mortgage of an unplanted crop, if executed after January 1st of that current year, passes the legal title to the mortgagee from the moment of its execution. * * * This, of course, means to apply to such crops as may thereafter, during said year, be produced by the mortgagor, his agents, servants, or employees, * * * but not to crops grown by a tenant, for in the latter case the landlord had, and could have, no legal title to convey. The legal title would be in the tenant, subject to the lien of the landlord for rent. This case involves only crops grown by tenants.

592

"The mortgage in question was, however, efficacious to transfer to the petitioner the rent claims or rent obligations of the tenants on the land for that year. And this constituted a severance of the rents from the reversion; and the purchase by, or the conveyance of the mortgagor to, the daughter of the mortgagor, of the land, subsequent to the execution and recordation of the mortgage, could not defeat the rights of the mortgagee, as transferee of the rents, in a proper proceedings."

The appellees insist that the foregoing record discloses that the several mortgages, as to crops described therein, were merely assignments by mortgagor of his rents for 1935. It is further insisted that the statute [General Acts of Alabama, 1933, Ex.Sess. p. 131 (Act of 1935, p. 202, not being applicable)] does not deal with the right of the landlord to assign his rents for the year. Herren v. Burns, et al., 217 Ala. 692, 117 So. 417; Bennett v. McKee, 144 Ala. 601, 38 So. 129; Bank of Florala v. Williams, 230 Ala. 676, 163 So. 321; First National Bank v. Crawford, 227 Ala. 188, 149 So. 228.

■ Adverting to the conflict in the evidence as to whether the mortgage delivered to and filed with the judge of probate contained and embraced the crop for the year 1935 and was not so recorded, its filing for record operated as notice and was not ruled by its improper transcription. Chapman & Co. v. Johnson, 142 Ala. 633, 38 So. 797, 4 Ann.Cas. 559.

The witness Mizell testified as follows: "It all amounted to $28,913.10, and that mortgage covered the crops of 1935. I was right there when this mortgage was written. I did not write it but I superintended it and looked it over and handled the transaction. The year 1935 was in the mortgage at the time Carter signed it and it was there when I had it filed for record here. When I sent it for record it was still in the mortgage. I understand that the mortgage record does not show it was the 1935 crop. I renewed with Carter again in 1935."

The witness Traylor testified she was a clerk in the probate office and that to the best of her recollection the mortgage did not include the crops of 1935.

It was admitted by plaintiff and defendant that the crops in question were grown on the Carter lands in Randolph county during the year 1935; that Mizell sold to Camp a large portion of the personal property involved in this suit; and that the latter sold the same in the quantities and of the kind stated—cotton, corn, hogs, and mules. If this fact were material, it was decided by the trial court in defendants' favor.

The Alabama and general authorities to said effect are collected in 70 A.L.R. p. 595, where it is stated: " * * * an instrument affecting property, duly deposited with the proper officer for the purpose of having it recorded, is subsequently not recorded, or incorrectly recorded, through the neglect or fault of the officer. Whether a subsequent purchaser or attaching creditor of the property involved will be held to have constructive notice of the instrument, notwithstanding the misfeasance of the recording officer, is the question involved. Cases dealing with the consequences of improper indexing or failure to index are not included in this annotation, and may be found in the annotation in 63 A.L.R. 1057 [Records, § 15]."

■ The evidence shows that Carter never paid his debt to Mizell during the years in question, the renewal of note from time to time not being payment or novation of the old debt evidenced by notes and mortgages, the record does not disclose any agreement, expressed or implied, which amounted to payment or novation. Green v. Nabors, 222 Ala. 367, 132 So. 889; Manser v. Sims et al., 157 Ala. 167, 47 So. 270; Tuscaloosa-Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236.

The insistence by appellant that personal property and crop mortgage had included in it interest due on real estate mortgage would make no difference as to the crop, if rents were made the subject by the amended complaint and an action on the case. It is sufficient to say that it was all one debt carried forward and secured by the several mortgages which were not paid.

Section 9008 of the Code of 1923 was amended by the General Acts of 1933, Ex. Sess. p. 131, as follows: "That section 9008 of the Code of Alabama of 1923 be, and the same is hereby amended so as to read as follows: '9008—A mortgage of unplanted crops of agricultural products, executed on or after the first day of January of the year in which such crops are grown, conveys the legal title

thereto, in all respects as if such crops were already planted; but all mortgages of crops grown or to be grown in any year except the year in which the mortgage is executed, and all contracts to execute such mortgages, shall be absolutely null and void.' "

The rule as to assignment of rents, and equitable liens on crops, was declared before this statute in Herren v. Burns, 217 Ala. 692, 117 So. 417; First National Bank v. Crawford, 227 Ala. 188, 149 So. 228.

In Shaw et al. v. Kinney, 227 Ala. 170, 149 So. 227, it is declared that:

"The purpose and effect of the statute, now section 9008 of the Code, as first enacted, was to authorize the mortgagee to pass the legal title to such crops by a mortgage executed on or after the 1st of January of the year in which the crop was to be grown. * * *

"The purpose and effect of the last amendment to this section of the Code was to deny the power to such mortgagors to incumber their crops, by equitable lien or title, except as to crops grown on land which the mortgagor owned or had a present interest in when the mortgage was given, during the year or years in which the debt secured by the mortgage, by its terms, matured."

The word "mortgagee" is improperly used for the word "mortgagor" in the first paragraph of the foregoing excerpt.

The last amendment to the statute, approved July 8, 1935, was after the mortgages in question were made and had no application. General Acts of Alabama 1935, p. 202.

The plaintiff's mortgage having priority by virtue of being taken and recorded after January 1, 1935, and prior to the date of the mortgage to the First National Bank, taken in February of the same year, if ruled by the record statutes, the plaintiff would be entitled to recover under Count 4 of the amended complaint. Connecticut General Life Insurance Co. v. Smith, 226 Ala. 142, 145 So. 651, 654; Code of 1923, 9008, amended as we have indicated by the General Acts of 1933, Ex.Sess., p. 131.

Such was the result announced on the original hearing. The case, however, was put on rehearing by the writer to more fully consider the relation of the parties at interest and the nature of the subject matter made the basis of this suit as defined by the agreed statement of facts.

The bill of exceptions recites the following as a part of the agreement of counsel:

" * * that during the year 1935 one S. M. Carter was operating a farm in Randolph County, Alabama, consisting of approximately 200 acres of land, and that the same was rented to some twelve or more tenants, who were working on what is commonly known as tenants on halves; with Mr. Carter furnishing the land, teams, tools and seed, and one-half the fertilizer; the tenants furnishing the labor and one-half the guano; and that the crops were to be divided equally between them; that the tenants became such on or before January 1st. 1935 * * * *."

The relation thus created between the parties and the nature of the subject matter presents that of a landlord and tenants and a suit for the rents of several tenants duly assigned by the landlord by way of and in the form of a mortgage. Code of 1923, § 8807; Giddy v. Shotts, 214 Ala. 627, 108 So. 573; Stewart v. Young, 212 Ala. 426, 103 So. 44.

It was on the theory that claims for rents were not required to be recorded that the trial court rendered judgment for the Bank. That is that rent claims and a due assignment thereof are without the influence of the record statutes, and the recent acts supra. In Bank of Florals v. Williams, 230 Ala. 676, 163 So. 321, the instant question was not concluded by the decision. However, in Herren v. Burns et al., 217 Ala. 692, 117 So. 417, the Chief Justice on the authority of Patapsco Guano Co. v. Ballard, 107 Ala. 710, 19 So. 777, 54 Am.St.Rep. 131, held that claims for rent were not required to be protected by recording. The Herren Case, supra, has been cited with approval in the cases of First National Bank of Stevenson v. Crawford, 227 Ala. 188, 149 So. 228; Shaw v. Kinney, 227 Ala. 170, 149 So. 227; Bank of Florala v. Williams, 230 Ala. 676, 163 So. 321.

■ A further consideration of the Herren Case on this appeal, and the several record statutes as amended, does not impress us that it was the legislative intent to require contracts for rents or the assignment thereof by the landlord to be recorded in the probate office.

■ It follows that under the agreed statement of facts, the priority of record in the probate office of the mortgage by Carter to White did not avail over the prior title of appellee to the rents acquired from the

same landlord's mortgage as a due assignment thereof.

The judgment of the circuit court is without error. The rehearing is granted and the judgment of the circuit court is affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.